UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ROBERT CRAWFORD, WILLIAM ETSCH,
ROBERT GOBBO, TRACEY CACACE,
MICHAEL CRUZ, DAVID COLLINS,
TROI MOSBY, and SHAWN MILLER,

                    Plaintiffs,                    **MEMORANDUM & ORDER**

   -against-                                         12 CV 3850 (DRH) (WDW)

CORAM FIRE DISTRICT, THOMAS LYON,
individually and in his capacity as Coram Fire
District's Chairman of the Board, VANDORN
JOHNSON, individually and in his capacity as
Coram Fire District's Commissioner, JEROME A.
DELLI BOVI, individually and in his capacity as
Coram Fire District's Commissioner, STEVEN
YALAMAS, individually and his capacity as
Coram Fire District's Commissioner, TIMOTHY
HEIDRICH, individually and his capacity as
Coram Fire District's Commissioner,

                      Defendants.
-------------------------------------------------------------X

**APPEARANCES:**

**For the Plaintiffs:**
**FRANKLIN, GRINGER & COHEN, P.C.**
666 Old Country Road, Suite 202
Garden City, New York 11530
By:    Joshua Marcus, Esq.

**For the Defendants:**
**O'ROURKE & HANSEN, PLLC**
223 Brooksite Drive, Suite 300
Hauppauge, New York 11788
By:    James J. O'Rourke, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiffs, Robert Crawford, William Etsch, Robert Gobbo, Tracey Cacace, Michael Cruz, David Collins, Troi Mosby and Shawn Miller (collectively, "Plaintiffs"), object to the February 18, 2014 ruling of Magistrate Judge William D. Wall that Plaintiffs cannot depose or serve interrogatories on defendants' counsel, James O'Rourke, pertaining to an investigation regarding EMT timesheets and related matters, because the information Plaintiffs seek is protected by the attorney client privilege or the work-product doctrine.

For the reasons that follow, Plaintiffs' objections are denied.

## BACKGROUND

Plaintiffs, former Emergency Medical Technicians ("EMTs") in the Coram Fire District ("District"), commenced this action on August 3, 2012 claiming that defendants, District, Thomas Lyon, individually and in his capacity as Coram Fire District's Chairman of the Board ("Lyon"), Vandorn Johnson, individually and in his capacity as Coram Fire District's Commissioner ("Johnson"), Jerome A. Delli Bovi, individually and in his capacity as Coram Fire District's Commissioner ("Delli Bovi"), Steven Yalamas, individually and in his capacity as Coram Fire District's Commissioner ("Yalamas"), and Timothy Heidrich, individually and in his capacity as Coram Fire District's Commissioner ("Heidrich"), (collectively, "Defendants"), violated Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. and New York Labor Law ("Labor Law") §§ 190 and 650 et seq., by failing to pay them proper amounts of overtime compensation when they worked over forty hours in a week, and by retaliating against them by filing Civil Service charges ("Civil Service Charges") and commencing a lawsuit against them in

the New York State Supreme Court ("State Court Lawsuit") for having filed a complaint with the United States Department of Labor ("USDOL").

Specifically, Plaintiffs contend that after they filed complaints with the USDOL in May 2010, they were called to attend a meeting on June 8, 2010, wherein Defendants' counsel, James O'Rourke, notified Plaintiffs that they faced disciplinary charges if they failed to repay the District monies they had been paid for days they had not worked ("ghost days"). According to Plaintiffs, Defendants testified that James O'Rourke performed the investigation regarding the payment to Plaintiffs for the ghost days. Plaintiffs further assert that nobody discussed the matter with Plaintiffs before accusing them at the meeting. The Plaintiffs subsequently resigned from the District. Nonetheless, the District brought the State Court Lawsuit seeking restitution, and claiming that Plaintiffs knowingly falsified their payroll cards and submitted false payroll cards to Defendants resulting in Plaintiffs' being paid for work which they had not performed.

A pretrial conference in this case was scheduled for January 30, 2014. However, in advance of the pretrial conference, Plaintiffs filed a letter motion seeking "additional discovery relating to Defendants' purported 'investigation' which appear[ed] to have occurred immediately after the Plaintiffs filed a Complaint with the [USDOL]." *See* Docket No. 22. The pretrial conference was subsequently held on January 30, 2014, during which Judge Wall ordered Defendants to file opposition to Plaintiffs' motion to compel by February 14, 2014. *See* Docket No. 24. Defendants filed their opposition to Plaintiffs' motion to compel on February 13, 2013. Thereafter, on February 18, 2014, Judge Wall issued an Order denying Plaintiffs' motion to compel. Presently before the Court are Plaintiffs' objections to Judge Wall's February 18, 2014 ruling "that Defendants could not depose Defendants' counsel, James O'Rourke, or submit interrogatories to Mr. O'Rourke in connection with the investigation undertaken by Mr.

3

O'Rourke into Defendants' claims that the Plaintiffs had engaged in a practice of stealing time by filling out their timesheets in a manner whereby they were improperly paid for days they did not work." (Pls.' Mem. at 1.)

## DISCUSSION

### I. Standard of Review

This Court reviews a magistrate judge's decision regarding non-dispositive pretrial matters under a "clearly erroneous or contrary to law" standard. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). Discovery matters generally are considered non-dispositive of litigation. *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990).

An order is "clearly erroneous" only if a reviewing court, considering the entirety of the evidence, " 'is left with the definite and firm conviction that a mistake has been committed' "; an order is "contrary to law" when it " 'fails to apply or misapplies relevant statutes, case law or rules of procedure.' " *E.E.O.C. v. First Wireless Grp., Inc.*, 225 F.R.D. 404, 405 (E.D.N.Y. 2004) (quoting *Weiss v. La Suisse*, 161 F. Supp. 2d 305, 320-21 (S.D.N.Y. 2001)); *accord U2 Home Entm't, Inc. v. Hong Wei Int'l Trading Inc.,* 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007). This standard is "highly deferential," "imposes a heavy burden on the objecting party," and "only permits reversal where the magistrate judge abused his discretion." *Mitchell v. Century 21 Rustic Realty*, 233 F. Supp. 2d 418, 430 (E.D.N.Y. 2002), *aff'd*, 45 F. App'x. 59 (2d Cir. 2002); *accord Schwartz v. Metro. Prop. & Cas. Ins. Co.*, 393 F. Supp. 2d 179, 181 (E.D.N.Y. 2005).

Because it is clear that magistrate judges are best qualified to "judge the entire atmosphere of the discovery process," *Bogan v. Nw. Mut. Life Ins. Co.*, 144 F.R.D. 51, 53 (S.D.N.Y. 1992), their discovery-related rulings are entitled to a particular deference. *See Nikkal*

*Indus., Ltd. v. Salton, Inc.*, 689 F. Supp. 187, 189 (S.D.N.Y. 1988) ("Consistently, it has been held that a magistrate's report resolving a discovery discourse between litigants should be afforded substantial deference and be overturned only if found to be an abuse of discretion.").

## II.     *The Parties' Arguments*

Plaintiffs argue that they should be permitted to either depose or submit interrogatories to Defendants' counsel, James O'Rourke, because: (1) "the retaliatory nature of the [Civil Service Charges] and [State Court Lawsuit] can be . . . established, in part, by the fact [that] the District never conducted a good-faith investigation of the [Civil Service Charges] before reaching its conclusions" (Pls.' Mem. at 2); (2) "James [Delli Bovi] testified that the [D]istrict relied on its attorney, James O'Rourke, to conduct an investigation and that he produced a report as to his findings[, but] . . . Mr. O'Rourke [has contradictorily] asserted that he has no notes and never issued a report as to his findings" (*id.* at 2-3); and (3) "Defendants have waived their right to invoke the attorney-client privilege[,] because [O'Rourke's] investigation has been put at issue by the Defendants" by their "relying upon it as evidence that they had a legitimate reason for filing [the State Court Lawsuit] against the Plaintiffs." (*Id.* at 3, 8).[1]

Defendants respond that they "have not waived any attorney-client privilege nor have [they] put the issue of [their] work product and protected attorney-client privileged information at issue." (Defs.' Opp'n. at 4.) Defendants argue that, to the contrary, "Plaintiffs have created the issue" as they "attempt to attack the investigation as lacking good faith while simultaneously demanding to see the purported investigation." (*Id.*)

---

[1] Plaintiffs also assert that "not only have Defendants put Mr. O'Rourke's 'investigation' at issue, but . . . the Plaintiffs have serious concerns whether Mr. O'Rourke by conducting his investigation should be disqualified as counsel for the Defendants." (Pls.' Mem. at 11.) However, because Plaintiffs did not raise this specific argument before Judge Wall, the Court is not required to entertain it. *See, e.g.*, *Orix Fin. Servs., Inc. v. Thunder Ridge Energy, Inc.*, 2006 WL 587483, at *4 (S.D.N.Y. Mar. 8, 2006) ("The Court need not consider at the objection stage any legal argument not presented to the Magistrate Judge.") (citations omitted).

5

### III. Judge Wall's February 18, 2014 Order Was Neither Clearly Erroneous Nor Contrary to Law

Judge Wall's February 18, 2014 Order determined that the information Plaintiffs seek is protected by the attorney-client privilege and/or the work product doctrine and therefore is not discoverable. In addition, the February 18, 2014 Order states that "Plaintiff[s'] argument that the privilege has been waived by putting the details of the investigation at issue is unpersuasive." The Court finds that the conclusion reached in the February 18, 2014 Order is not clearly erroneous or contrary to law under the governing laws, the particular facts of this case, and the arguments presently advanced by the parties.

#### A. Attorney-Client Privilege

The attorney-client privilege protects communications between an attorney and a client that were "intended to be and [were] in fact kept confidential," and "made for the purpose of obtaining or providing legal advice." *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996); *see also Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). Where, as here, claims are based on federal statutes, "privilege issues are governed by common law." *Local 851 of the Int'l Bhd. of Teamsters*, 36 F. Supp. 2d 127, 129 n.2 (E.D.N.Y. 1998) (citing Fed. R. Evid. 501); *see also Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 441 (S.D.N.Y. 1995) (finding that when disputed documents related to both federal and state law claims, "privilege issues are [ ] governed by federal common law"). The party seeking to invoke the attorney-client privilege bears the burden of proving not only the facts upon which the claim is based, *see Constr. Prods.*, 73 F.3d at 473, but also that any such privilege has not been waived, *see Wellnx Life Scis. Inc. v. Iovate Health Scis. Research Inc.*, 2007 WL 1573913, at *4 (S.D.N.Y. May 24, 2007).

B.  *Work Product Protection*

"The Supreme Court initially recognized the work product doctrine in *Hickman v. Taylor* based on the theory that 'it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 169 (S.D.N.Y. 2002) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)) (internal citation omitted).  The work product protection applies to "protect material prepared by agents for the attorney as well as those prepared by the attorney himself." *United States v. Nobles*, 422 U.S. 225, 238-39 (1975).  However, "[t]he privilege derived from the work-product doctrine is not absolute[,] . . . it may be waived." *Id.* at 239.  "The party asserting the protection afforded by the work product doctrine has the burden of showing both that the protection exists and that it has not been waived." *Bank of Am., N.A.*, 212 F.R.D. at 169.

A party will waive work product protection when it uses the protected documents "in a manner that is inconsistent with the protection." *Id.* at 170.  Because the work product doctrine protects documents "'prepared in anticipation of litigation or for trial by or for another party or its representative,'" Fed. R. Civ. P. 26(b)(3)(A), the test for waiver "is whether the disclosure at issue has 'substantially increased the opportunities for potential adversaries to obtain the information.'" *In re Vitamin C Antitrust Litig.*, 2011 WL 197583, at *2 (E.D.N.Y. Jan. 20, 2011) (quoting *In re Visa Check/Master Money Antitrust Litig.*, 190 F.R.D. 309, 314 (E.D.N.Y. 2000)).

C.  *Whether Defendants Have Waived Attorney-Client Privilege and Work Product Protection*

"It is well established doctrine that in certain circumstances a party's assertion of factual claims can, out of considerations of fairness to the party's adversary, result in the involuntary forfeiture of privileges for matters pertinent to the claims asserted." *John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003).  "Known as 'implied waiver' or 'at-issue waiver,' this

7

involuntary forfeiture of privilege may arise when the party attempts to use the privilege both as a shield and a sword by partially disclos[ing] privileged communications or affirmatively rely[ing] on [them] to support its claim or defense and then shield[ing] the underlying communications from scrutiny." *Pall Corp. v. Cuno Inc.*, 268 F.R.D. 167, 168 (E.D.N.Y. 2010) (alteration in original) (quoting *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie, S.C.A.*, 258 F.R.D. 95, 106 (S.D.N.Y. 2009)) (internal quotation marks omitted). Thus, waiver of privilege occurs "when a party puts *its own* conduct at issue." *Id.* (quoting *Ohio Cas. Grp. v. Am. Int'l Specialty Lines Ins. Co.*, 2006 WL 2109475, at *4 (S.D.N.Y. July 25, 2006)).

The following factors are typically present when a party has waived privilege by putting its own conduct at issue:

> (1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his [claim or] defense.

*Ohio Cas. Group*, 2006 WL 2109475, at *3 (quoting *Granite Partners, L.P. v. Bear, Stearns & Co.*, 184 F.R.D. 49, 55 (S.D.N.Y.1999)). "The key to a finding of implied waiver . . . is some showing by the party arguing for a waiver that the opposing party *relies* on the privileged communication as a claim or defense or as an element of a claim or defense." *In re Cnty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008). "The assertion of an 'advice-of-counsel' defense has been properly described as a 'quintessential example' of an implied waiver of the privilege." *Id.* Moreover, "even if the privilege holder does not attempt to make use of the privileged information[,] . . . the privilege [may be waived] if [the privilege holder] makes factual assertions the truth of which can only be assessed by examination of the privileged communication."

*Pereira v. United Jersey Bank*, 1997 WL 773716, at *4 (S.D.N.Y. Dec. 11, 1997) (alternation in original) (citations and internal quotation marks omitted).

In order to determine whether Defendants have impliedly waived privilege, it is necessary for the Court to review the parties' respective burdens pertaining to Plaintiffs' retaliation claims. Retaliation claims analyzed under FLSA and Labor Law apply the three-step burden-shifting framework identified in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1972). *See Esmilla v. Cosmopolitan Club*, 936 F. Supp. 2d 229, 238-39 (S.D.N.Y. 2013) (applying burden-shifting framework to retaliation claim brought under the Labor Law); *Lai v. Eastpoint Int'l, Inc.*, 2000 WL 1234595, at *3 (S.D.N.Y. Aug. 31, 2000) (applying *McDonnell Douglas* burden-shifting framework to retaliation claim brought under the FLSA).

In the first step of the burden-shifting framework, Plaintiffs must establish their prima facie case of retaliation by showing that 1) they participated in a protected activity that was known to Defendants, 2) action was taken by Defendants to disadvantage Plaintiffs, and 3) a causal connection existed between the protected activity and the adverse action taken by Defendants. *Lai*, 2000 WL 1234595, at *3. Notably, Plaintiffs' burden of establishing their prima facie case does not implicate any of Defendants' privileged communications or work product. However, once Plaintiffs have established their prima facie case, "the burden shifts to [Defendants] to articulate a 'legitimate, non-discriminatory reason for the [adverse] action.' " *Id.*, at *4 (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)). It is as this juncture that the attorney-client communications and work product at issue come into play. If Defendants intend to assert "reliance on advice of counsel" as a legitimate, non-discriminatory reason for the actions they took in filing the Civil Service Charges and the State Court Lawsuit, then Defendants will have affirmatively put the otherwise privileged information at issue by

9

making it relevant to the case, thereby opening the door to Plaintiffs to inquire about the investigation and the advice that was given.

The case *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991), although factually distinguishable, is instructive. In that case, the defendant, who was charged with, *inter alia*, conspiring to defraud the IRS and the SEC, argued in his defense that he had made a good faith attempt to comply with the securities laws. *Id.* at 1291. The defendant sought permission to testify as to his good faith belief in the lawfulness of his conduct, but argued that he could not be cross-examined about his communications with his attorney on that subject because those communications were privileged. *Id.* The trial court held that if the defendant "testified [about] his good faith regarding the legality of [his actions], it would open the door to cross-examination with respect to the basis for his belief, and that such cross-examination would allow inquiry into communications with his attorney." *Id.* On appeal, the Second Circuit determined that "the refusal to grant [the defendant] blanket protection from an implied waiver of the attorney-client privilege was not an abuse of discretion." *Id.* at 1293. The Second Circuit reasoned that the "waiver principle" applied to the defendant's "testimony that he thought his actions were legal" because the defendant "would have put his knowledge of the law and the basis for his understanding of what the law required in issue." *Id.* at 1292. Thus, the Second Circuit reasoned that the defendant's "conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent." *Bilzerian*, 926 F.2d at 1292. Notably, the Second Circuit also recognized that the district court's ruling "did not prevent [the] defendant from denying criminal intent; the district judge merely said that [the defendant's] own testimony as to his good faith would open the door to cross-examination, possibly including inquiry into otherwise privileged communication with

his attorney[, but the] [d]efendant was free to deny criminal intent either without asserting good faith or to argue his good faith defense by [other means]." *Id.* at 1293.

In this case, Defendants state in their opposition that they "are indeed relying on the work product and attorney-client privileged information generated by Mr. O'Rourke as a basis for their state law claim," and that they "maintain a good faith basis to Plaintiffs' allegations of retaliation." (Defs.' Opp'n. at 4.) These statements suggest that Defendants are asserting their reliance on advice of counsel as providing a good faith basis for bringing the State Court Lawsuit, i.e., as providing a legitimate, non-discriminatory reason for bringing the State Court Lawsuit. However, immediately after acknowledging the above in their opposition, Defendants state that they "answered Plaintiffs' allegations of retaliation by the simple fact that the decision to file the state law suit was based on the Plaintiffs' own statement that they had been paid for time not worked." (*Id.*) Thus, Defendants assert a separate basis for bringing the State Court Lawsuit- one which notably does not rely on the advice of counsel as providing a good faith basis for bringing the action. Indeed, neither the complaint filed by Defendants in the State Court Lawsuit, (*see* Exh. D to Affirmation of Joshua Marcus, dated March 4, 2014 ("Marcus Aff.")), nor the answer interposed by Defendants in the instant action, (*see* Exh. Q to Marcus Aff.), assert that Defendants relied on the advice of counsel as providing a good faith basis for bringing the State Court Lawsuit. It was only upon the questioning of Delli Bovi and Johnson at their depositions that Defendants testified that O'Rourke investigated the issue of the alleged overpayments to Plaintiffs. (*See* Exh. N. to Marcus Aff. at 16-18; Exh. L to Marcus Aff. at 55-57.) Notably, however, Defendants did not testify that they relied in good faith on O'Rourke's advice in bringing the State Court Lawsuit. Accordingly, it cannot be said that Defendants have put the reliance on advice of counsel at issue by indicating that they will certainly rely on such

evidence to establish their non-discriminatory reasons for their actions. However, if Defendants introduce evidence of their reliance on the advice of O'Rourke as a legitimate, non-discriminatory basis for bringing the State Court Lawsuit, they will waive their attorney-client privilege. Should that occur, Plaintiffs will have a right to inquire into the matter at that time.

## *CONCLUSION*

For all of the above reasons, Plaintiffs' objections are denied and Judge Wall's February 18, 2014 Order is affirmed.

**SO ORDERED.**

Dated: Central Islip, New York
April 29, 2014

/s/
Denis R. Hurley
United States Senior District Judge